64108. McKENZIE v. THE STATE.

BANKE, Judge.

The defendant appeals his conviction for burglarizing the Flash Food Store in Ludowici, Georgia.

Two witnesses testified that they saw the defendant on the premises of the store during the early morning hours of May 25, 1981.

Both were there to service newspaper vending machines. The first testified that she arrived at 2:45 or 2:50 a.m., that she saw the defendant for a period of about 3 or 4 seconds, and that she immediately proceeded to the police station to report that the store was being robbed. Although she did not describe the suspect to police, she stated at trial that the man she saw had reddish hair and was wearing a light colored shirt. The second eyewitness arrived at the store at 3:15 or 3:20 a.m. He stated that he saw a man take something from atop the ice machine, walk to the road, and begin running, whereupon he gave chase in his truck, following the suspect down a side road and into the woods. He testified that he was able to observe the suspect in his headlights for several minutes, until the terrain finally forced him to discontinue his pursuit. He then proceeded to the police station, where he described the suspect as a redheaded man wearing a white shirt and khaki pants. Informed that police were already enroute to the scene, he returned to the spot where he had given up the chase and found several rolls of change strewn across the grounds.

Within a few minutes, police apprehended the defendant walking out of the woods about 100 feet from the convenience store. About 10 minutes later, the arresting officer brought him before the witness in the pickup truck, who identified him as the person he had seen running from the store. At trial, the defendant testified that he had been walking down the highway on his way to a job interview when police arrested him. *Held:*

1. The primary issue in this appeal concerns the admission of the in-court identification testimony of the two eyewitnesses over the defendant's objection that their identifications were irreparably tainted by an impermissibly suggestive lineup held on the afternoon following his arrest. Participating in this lineup were six white males, including the defendant. From photographs of the lineup contained in the record, it appears that all the participants were about the same height, age, and weight. Although the defendant contends that he was the only one in the lineup with red hair, there is no evidence to support this contention. The photographs are in black and white, and the two eyewitnesses stated that they did not notice what color hair the other participants had. The only factor revealed by the photographs which could be described as suggestive is not mentioned in the defendant's brief, that is, that he was the only participant wearing a solid, light colored shirt.

The two witnesses rode to the lineup in the same car, during which time they had an opportunity to discuss the events of the previous morning. While the first witness, who had only seen the defendant for a few seconds, identified him immediately, the second

witness initially chose someone else. Informed by police that he had chosen the wrong person, he immediately went back to the lineup, studied it for a few more seconds, and this time chose the defendant. The two witnesses testified that nothing was done to suggest that the defendant was the person suspected of the burglary.

Citing Swicegood v. Alabama, 577 F2d 1322 (5th Cir. 1978), the defendant contends on appeal that because the two witnesses had an opportunity to converse prior to the lineup and because one of them initially chose another man, the conclusion is demanded that the lineup was impermissibly suggestive. We do not agree. In Swicegood, described by the Fifth Circuit as an extremely close case, the record did not contain a photograph of the lineup, and the court was consequently unable to make its own determination as to the similarity or dissimilarity of the participants. Furthermore, some dissimilarity was suggested by the fact that the appellant was considerably older than the other lineup participants. The court noted that only one of the two robbery victims who viewed the lineup had previously seen the assailant's face and that her opportunity had lasted for only a couple of seconds. Neither of the two victims was able to identify the appellant on the first viewing, at which time each of the participants was masked; however, both chose him promptly after the masks were removed. Due to this combination of circumstances, particularly the fact that the witness who had never before seen the appellant's face chose him after having an opportunity to consult with the other witness, the court expressed concern about the reliability of the identification procedure.

The case under consideration now is clearly distinguishable on its facts. In the first place, we have photographs of the lineup, and these photographs depict six white males who appear to be of similar height, age, and weight. Furthermore, there is no indication that the two witnesses involved in this case were given an opportunity to discuss the lineup while it was in progress, nor do we have an identification by a witness who had never before seen the suspect. From the totality of the circumstances, we hold that the trial court was authorized to conclude that the lineup was not impermissibly suggestive and that it did not create a substantial likelihood of misidentification. It follows that the court did not err in allowing the witnesses' in-court identification testimony. See *Mitchell v. State,* 236 Ga. 251 (2) (223 SE2d 650) (1976); *Davis v. State,* 158 Ga. App. 549 (6) (281 SE2d 305) (1981); *Mullins v. State,* 147 Ga. App. 337 (4) (248 SE2d 706) (1978).

2. The court did not err in failing to grant a mistrial after the sheriff testified that the defendant had refused to make any statement after being advised of his Miranda rights. Defense counsel

did not object or move for a mistrial at the time the state elicited this response, but instead elicited the same response three times on cross-examination. "Whether or not the failure to object alone would have amounted to a waiver, the failure to object coupled with a later interrogation by defense counsel on the same subject amounted to a waiver of the objection to the earlier questions. [Cits.]" *DeBerry v. State,* 241 Ga. 204, 205 (243 SE2d 864) (1978).

3. The trial court did not deprive the defendant of a fair trial by its interrogation of one of the state's witnesses. The court expressed no opinion as to the defendant's guilt or innocence or as to what had or had not been proved, and the questions were not argumentative in character. See generally Code § 81-1104; *Koza v. State,* 158 Ga. App. 709 (282 SE2d 131) (1981); *Dyer v. State,* 155 Ga. App. 705 (272 SE2d 568) (1980). Indeed, the questions were asked for the purpose of determining the admissibility of an item of evidence offered by the state, and based on the witness' responses, the evidence was disallowed. In any event, the defendant did not object to the court's questioning at trial, nor did he move for a mistrial. Consequently, he is estopped from raising the issue on appeal. See generally *State v. Griffin,* 240 Ga. 470 (241 SE2d 230) (1978); *Ezzard v. State,* 229 Ga. 465 (2) (192 SE2d 374) (1972).

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED JUNE 9, 1982.

*John E. Pirkle,* for appellant.
*Dupont K. Cheney, District Attorney, Douglas A. Datt, Assistant District Attorney,* for appellee.