## S12A1804. CAMPBELL v. THE STATE.
(740 SE2d 115)

HUNSTEIN, Chief Justice.

A jury convicted Tyrell Campbell of malice murder and other felonies in connection with the shooting death of Gary Paul Francis.[1] On appeal, Campbell contends that the trial court erred in its jury instructions and in conducting critical stages of the trial outside his presence. Finding no reversible error, we affirm.

1. The evidence presented at trial shows that the 24-year-old Campbell lived briefly with Francis and his girlfriend, Ykeme Smith, while attending college in October 2005. Smith asked Campbell to move out of their house after he dumped cigar ashes on food in a take-out container and failed to clean up after his dog. On November 3, 2005, Francis and Smith confronted Campbell in the early evening while he was visiting at a neighbor's house and accused him of stealing Francis's clothes. One of them had a pipe bender used in plumbing, and they were "cussing," pushing, and shoving Campbell. When the fight ended, Francis and Smith walked back to their house where Francis placed the pipe in their bedroom and put on a shirt. Campbell drove a friend home and came back to the neighbor's house approximately 20 minutes later. He was standing on the porch with George Parks when Francis and Smith walked past. They were calling and threatening Campbell from the sidewalk, and Smith still

---

[1] The shooting occurred on November 3, 2005, and Campbell was indicted in Fulton County on June 23, 2006. On March 2, 2007, the jury found him guilty of murder, felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and false statements. The trial court sentenced him to life imprisonment on the malice murder charge and consecutive five-year terms on both the firearm possession and false statements charges. The remaining charges merged or were vacated by operation of law. Campbell filed a motion for new trial on March 16, 2007 and an amended motion for new trial on July 15, 2011, which was denied on April 26, 2012. Campbell filed a notice of appeal on April 27, 2012. The case was docketed in this Court for the September 2012 term and orally argued on November 6, 2012.

had the pipe in her hand. Parks testified that Campbell said he had better leave before he hurt one of them, then got into his car and drove away in the opposite direction. As Francis and Smith were turning the street corner, Campbell pulled up beside them, and they exchanged more words. He drove past them, then backed up, and Francis approached the car. Smith was approximately 30 feet away when she saw Campbell pull out his gun and shoot Francis one time. Francis was taken to the hospital where he died a half hour later from a gunshot wound to the chest. Three days later, police officers arrested Campbell and searched his car, finding a book bag containing a .380 caliber handgun. An expert in firearms analysis testified that the cartridge case found at the crime scene was ejected from the gun in Campbell's book bag. Viewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Campbell guilty beyond a reasonable doubt of the crimes charged. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Campbell contends that the trial court erred in refusing to instruct the jury on voluntary manslaughter as a lesser included offense of malice murder. In its order denying Campbell's motion for a new trial, the trial court found that Campbell was not entitled to the instruction on voluntary manslaughter because he relied on an alibi defense and the evidence did not support the giving of the charge.

A person commits voluntary manslaughter when he causes the death of another person under circumstances that would otherwise be murder and "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). The fact that a defendant relies on an alibi defense does not automatically prohibit a charge on voluntary manslaughter. Cf. *Washington v. State*, 249 Ga. 728 (3) (292 SE2d 836) (1982) (defendant's reliance in murder trial on defense of justification does not preclude charge on lesser included crime of voluntary manslaughter). The trial court is required to instruct the jury on voluntary manslaughter on request when there is some evidence that the defendant committed the lesser included offense. See *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994). It is a question of law for the courts to determine whether the defendant presented any evidence of sufficient provocation to excite the passions of a reasonable person. *Pace v. State*, 258 Ga. 225 (2) (367 SE2d 803) (1988); *Aldridge v. State*, 258 Ga. 75 (2) (365 SE2d 111) (1988). "[W]ords alone, regardless of the degree of their insulting nature, will (not) in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter, where the killing is done solely on account of the indignation aroused by the use of

opprobrious words." (Citation, punctuation and emphasis omitted.) *Brooks v. State*, 249 Ga. 583, 586 (292 SE2d 694) (1982).

In this case, the evidence presented at trial did not warrant a jury instruction on voluntary manslaughter. The initial confrontation at the neighbor's house ended when Francis and Smith returned to their house and Campbell left in his car to take a friend home. Shortly after returning, Campbell was standing on the neighbor's porch when Francis and Smith threatened him from the sidewalk. They continued walking down the street to the store, and Campbell again left in his car, driving in the opposite direction from them. As Francis and Smith walked around the corner, Campbell drove up slowly beside them, and they argued. He either drove past them and then backed up or drove off and came back around the corner before pulling up beside them a second time. Francis approached the car alone and was talking with Campbell when Campbell pulled out a gun and shot Francis. Contrary to Campbell's description of events, there is no evidence that Francis was armed with the pipe when he approached Campbell's car or exchanged words with him immediately prior to the shooting. Because there was no serious provocation that would elicit a violent and irresistible passion in a reasonable person, the trial court properly denied the request for a jury instruction on the lesser included offense of voluntary manslaughter. See *Armstrong v. State*, 264 Ga. 505 (3) (448 SE2d 361) (1994) (evidence adduced by State did not suggest any provocation sufficient to reduce the killing to manslaughter and defendant's evidence was that he was elsewhere when crime was committed); *Veal v. State*, 250 Ga. 384 (1) (297 SE2d 485) (1982) (evidence of angry words unconnected to any threat or provocative conduct other than physical contact that ended when defendant left room do not support charge on voluntary manslaughter).

3. Campbell also contends that the trial court committed reversible error in instructing the jury to consider any statement by Campbell with "great care and caution." He argues that the jury charge applies solely to admissions or confessions made to police and not to Campbell's exculpatory pre-trial statement to police. See *Pincherli v. State*, 295 Ga. App. 408 (3) (b) (671 SE2d 891) (2008); *McKenzie v. State*, 293 Ga. App. 350 (3) (667 SE2d 142) (2008). The State disagrees, claiming the instruction was proper because Campbell's statement that he did not own a firearm was the basis for the false statement charge.

Campbell's alibi defense was based on his pre-trial custodial statement and the testimony of an alibi witness. In his videotaped statement that was played at trial, Campbell denied shooting Francis, owning a gun, or having access to one, instead claiming that he was with another person that night. At trial, a fellow student testified

that Campbell had been at his apartment working on a school paper on the night of the murder. Concerning the defendant's custodial statement, the trial court charged the jury in part:

> You should consider with great care and caution the evidence of any statement made by the Defendant. [The j]ury may believe any statement in whole or in part, believe in that which you find to be true, rejecting that which you find to be untrue. Upon you alone rests the duty to apply the general rules for testing the believability of witnesses and decide what weight should be given to all or any part of such evidence.

In two cases decided after Campbell's trial, the Court of Appeals cautioned against giving the "great care and caution" charge when the defendant's statement was exculpatory and recommended that the suggested pattern jury instruction "be modified to refer to incriminatory statements only, i.e., admissions and confessions." See *McKenzie*, 293 Ga. App. at 353; *Pincherli*, 295 Ga. App. at 414 & n. 25. As a result of this recommendation, the charge was omitted from the pattern jury instructions as unnecessary. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.32.60 (Jan. 2013) (charge deleted because issue adequately covered by other charges).

Nonetheless, even assuming the giving of the "great care and caution" instruction was error, we conclude that it is highly probable that the charge did not contribute to the jury's verdict. "It is a fundamental rule . . . that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citations and punctuation omitted.) *Vergara v. State*, 287 Ga. 194 (3) (b) (695 SE2d 215) (2010). In this case, the jury was unlikely to apply the challenged instruction to the testimony of the alibi witness, as Campbell argues, given that the instruction referred only to the defendant's statement. See *Brown v. State*, 277 Ga. 53 (3) (a) (586 SE2d 323) (2003) (concluding a reasonable juror could not have believed the challenged jury instruction referred to defendant's trial testimony rather than his pre-trial statement to police). Moreover, the trial court instructed the jury on how to determine the credibility of witnesses and resolve conflicts in evidence and, further, that it should apply these general rules on credibility in deciding what weight to give Campbell's statement. Finally, the evidence of Campbell's guilt was overwhelming, irrespective of any statement he made. He was identified as the shooter by a witness who knew him, the cartridge case collected at the crime scene came from the handgun found in his book bag, and a friend testified that he had shown her the

same gun just prior to his arrest. For these reasons, we conclude that it was not reversible error for the trial court to give the "great care and caution" charge.

4. Finally, Campbell contends that his constitutional right to be present at his trial was violated. This right " 'exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by the defendant's absence.' " (Citations omitted.) *Parks v. State*, 275 Ga. 320, 322-323 (3) (565 SE2d 447) (2002). We have previously held that the constitutional right to be present is not violated when the defendant's absence occurs during conferences addressing legal matters to which the defendant cannot make a meaningful contribution. See *Huff v. State*, 274 Ga. 110 (2) (549 SE2d 370) (2001).

In this case, the pre-trial discussion of legal motions was not a critical stage of trial requiring Campbell's presence to ensure a fair hearing. Prior to the selection of the jury, the trial court addressed the State's motion in limine to exclude cross-examination of a witness about an issue of which Campbell's attorney was unaware, denied in part the State's motion in limine to exclude Campbell's attorney from mentioning that he was a former law enforcement officer, and began considering the defendant's motion to suppress his videotaped statement, which was subsequently played at trial. Since there was not a reasonably substantial relationship between Campbell's presence during the discussion of these legal matters and his opportunity to defend against the charges, we conclude that his right to be present during critical stages of his criminal trial was not violated. See *Parks*, 275 Ga. at 325 (defendant's right to be present not violated by his absence from bench conferences discussing legal matters where no witnesses discussed their testimony); *Bethune v. State*, 291 Ga. App. 674 (1) (662 SE2d 774) (2008) (defendant's absence during brief colloquy between the trial court and counsel on legal matters at pre-trial motions hearing did not violate his right to a fair trial).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 18, 2013 —
RECONSIDERATION DENIED APRIL 10, 2013.

*Brian Steel*, for appellant.

*Paul L. Howard, Jr., District Attorney, Joshua D. Morrison, Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Katherine L. Iannuzzi, Assistant Attorney General,* for appellee.